Brian S. Kabateck (SBN 152054)
 bsk@kbklawyers.com
Shant Karnikian (SBN 285048)
 sk@kbklawyers.com
Jerusalem F. Beligan (SBN 211258)
 jfb@kbklawyers.com
**KABATECK LLP**
633 W. Fifth Street, Suite 3200
Los Angeles, CA 90071
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

James L. Simon (*pro hac vice* forthcoming)
 james@bswages.com
**THE LAW OFFICES OF SIMON & SIMON**
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 525-8890

Michael L. Fradin (*pro hac vice* forthcoming)
 mike@fradinlaw.com
8401 Crawford Ave., Ste. 104
Skokie, IL 60076
Telephone: (847) 986-5889
Facsimile: (847) 673-1228

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sharon Oliveira, individually and on behalf of themselves and all others similarly situated, | Case No. __'22CV0003 LL    WVG__ |
| Plaintiff, | **CLASS ACTION** |
| vs. | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| AMN Healthcare, Inc., a Nevada corporation, and DOES 1 through 10, inclusive, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Sharon Oliveira ("Plaintiff"), individually and on behalf of all other persons similarly situated, files this collective and class action complaint ("Complaint") against defendant AMN Healthcare, Inc. (hereafter "AMN" or "Defendant") and DOES 1 through 10 (collectively, "Defendants") and alleges as follows:

## **PRELIMINARY STATEMENT**

1.      This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Ohio Minimum Fair Wage Standards Act ("OMWFSA"), O.R.C. 4111.01, *et seq.* and Fed. R. Civ. P. 23 for AMN's failure to pay Plaintiff and other similarly-situated employees (referred to herein as "Collective Members" and "Class Members") all earned minimum and overtime wages.

2.      Plaintiff, the Collective Members and the Class Members are current and former employees of AMN. Plaintiff brings this action on behalf of herself and all similarly-situated current and former Interpreters (also referred to as the "Covered Positions") of AMN.[1]

3.      The Collective Members are all current and former Interpreters, or other similarly titled employees, who were employed by AMN starting three years before this Complaint was filed, up to the present.

4.      The Class Members are all current and former Interpreters, or other similarly titled employees, who were employed by AMN within the state of Ohio starting three years before this Complaint was filed, up to the present.

5.      Under the FLSA and OMWFSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular

---

[1] For the purposes of this Complaint, "Interpreters" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of Plaintiff and the putative class, and has no bearing or relation to any specialization, skill, educating, training, or other qualification that might otherwise be associated with such a job title.

**COLLECTIVE AND CLASS ACTION COMPLAINT**

rates of pay for all time they spend working over 40 hours in a workweek. AMN failed to pay Plaintiff, the Collective Members and the Class Members one and one-half times their regular rate of pay for all time they spent working over 40 hours in a workweek. Plaintiff therefore brings this Complaint as a class action and collective action under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for AMN's violation of federal and Ohio law as detailed further below.

6.      Under the FLSA and OMFWSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working over 40 hours in a workweek. To compute the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215. AMN paid Plaintiff, the Collective Members and the Class Members non-discretionary bonuses, but AMN did not include these payments as part of Plaintiff's, the Collective Members' and the Class Members' regular rates of pay for purposes of paying overtime.

7.      Under the FLSA and OMWFSA "[r]est periods of short duration, running from 5 minutes to about 20 minutes. . . must be counted as hours worked." *See* 29 C.F.R. 785.18; *see also Mauia v. Petrochem Insulation,* Inc., 5 F.4th 1068, 1074 (9th Cir. 2021). AMN violated the FLSA and OMWFSA by routinely failing to pay Plaintiff, the Collective Members and the Class Members for rest breaks shorter than 20 minutes.

8.      The wage requirements of the FLSA and OMFWSA "will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." *See* 29 C.F.R. 778.315. "For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased

**COLLECTIVE AND CLASS ACTION COMPLAINT**

by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id*. AMN violated the FLSA and OMFWSA by requiring Plaintiff, the Collective Members and the Class Members to provide the internet services necessary to complete their Interpreter job duties for AMN while failing to reimburse Plaintiff, the Collective Members and the Class Members for the costs of the same.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

10.      Venue is proper in this district under 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff and the Collective Members occurred within this District.

11.      At all relevant times, Plaintiff has been a resident of Franklin County, Ohio and performed work for AMN within the state of Ohio.

12.      AMN is headquartered at 12400 High Bluff Drive San Diego, California 92130.

13.      AMN regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

14.      Plaintiff, the Collective Members and the Class Members in their work for AMN were employed by an enterprise engaged in commerce with annual gross sales of at least $500,000.

## PARTIES

15.      At all times material to the matters alleged in this Complaint, Plaintiff is a current employee of AMN.

16.      Plaintiff is a full-time employee of AMN who worked and continues to work as an Interpreter from approximately May 1, 2020 through the present.

**COLLECTIVE AND CLASS ACTION COMPLAINT**

17.     The Collective Members are all current and former Interpreters who worked for AMN in the United States at any point in the three years preceding the filing of this Complaint.

18.     The Class Members are all current and former Interpreters who worked for AMN in the state of Ohio at any point in the three years preceding the filing of this Complaint.

19.     The Class and Collective Members are non-exempt from the OMFWSA and FLSA overtime requirements.

20.     At all material times, AMN Healthcare, Inc. is a Nevada corporation duly licensed to transact business in the State of Ohio, and is headquartered in San Diego, California.

21.     Under the OMFWSA and FLSA, AMN is an employer. At all relevant times, AMN had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with AMN. As a person who acted in the interest of AMN in relation to the company's employees, AMN is subject to liability under the OMFWSA and FLSA.

22.     At all material times, Plaintiff and the Collective and Class Members were employees of AMN as defined by the OMFWSA and FLSA, 29 U.S.C. § 203(e)(1).

23.     At all material times, Plaintiff and the Collective and Class Members were non-exempt employees under 29 U.S.C. § 213(a)(1).

24.     Plaintiff has given her written consent to be a named party in this action under 29 U.S.C. § 216(b), a true and accurate copy of which is attached to this Complaint as "**Exhibit A**."

25.     The true names and capacities, whether individual, corporate, associate,

representative, alter ego or otherwise, of defendants named in this action as DOES 1 through 10 inclusive are presently unknown to Plaintiff, who therefore sues such defendants by such fictitious names. Plaintiff will seek to amend this Complaint to allege the true names and capacities of DOES 1 through 10 when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff and the Collective and Class Members for the events, happenings, and damages set forth below.

26.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times mentioned herein, Defendants acted as agents, employees, supervisors, partners, conspirators, servants and/or joint venturers of each other, and in doing the acts hereafter alleged, were acting within the course, scope, and authority of such agency, employment, partnership, conspiracy, enterprise and/or joint venture, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants

## FACTUAL ALLEGATIONS

27.     AMN provides staffing and recruitment services for healthcare providers nationwide.[2]

28.     One of the services that AMN provides is supplying healthcare providers with qualified language interpreters such as Plaintiff, the Collective Members and the Class Members.[3]

29.     The Collective Members are all current and former Interpreters who worked for AMN nationwide at any point in the three years preceding the filing of this

---

[2] *See* https://www.amnhealthcare.com/about/why-amn-healthcare/ (last visited Nov. 5, 2021)

[3] *See* https://www.amnhealthcare.com/staffing/schools/language-interpretation/ (last visited Nov. 5, 2021).

Complaint. The Collective Members are non-exempt from the FLSA's overtime requirements.

30.     The Class Members are all current and former Interpreters who worked for AMN in Ohio at any point in the three years preceding the filing of this Complaint. The Class Members are non-exempt from the OMFWSA's overtime requirements.

31.     Plaintiff worked for AMN as an Interpreter, providing two-way language translation for AMN's clients. At all relative times, Plaintiff worked remotely from her residence in Franklin County, Ohio. The Collective and Class Members similarly work remotely using AMN's propriety technology, hardware, and software.

32.     At all relevant times, Plaintiff was compensated on an hourly basis at a rate of approximately $22.00.

33.     At all relevant times, Plaintiff worked approximately 50 hours per week.

34.     During every workweek, Plaintiff and the Collective and Class Members were paid on an hourly basis.

35.     Plaintiff, the Collective Members, and the Class Members perform their duties, work and provide their interpretation services for AMN remotely. As part of this design, AMN issues Plaintiff, the Collective Members and the Class Members computer, audio and video equipment for use in Plaintiff's, the Collective Members' and the Class Members' homes. This AMN equipment all contains AMN's proprietary software programs which Plaintiff, the Collective Members and the Class Members must log on to perform their job functions for AMN.

36.     At all relative times, Plaintiff, the Collective Members and the Class Members have been subject to AMN's policy of requiring Plaintiff, the Collective Members and the Class Members to spend time working before clocking in at the beginning of their shifts and after clocking out at the end of their shifts.

37.     Specifically, Plaintiff, the Collective Members and the Class Members must set up the required audio and video equipment and perform quality checks before

**COLLECTIVE AND CLASS ACTION COMPLAINT**

"clocking in." In addition, Plaintiff, the Collective Members and the Class Members are required to spend time booting up and logging into their computers before clocking in for their shift. As a result, Plaintiff, the Collective Members and the Class Members were being required to perform pre-shift work for which they were not being compensated. Moreover, Plaintiff, the Collective Members and the Class Members are required to clock out at the end of their shift before logging off, shutting down their computers and cleaning the AMN issued equipment. As a result, Plaintiff, the Collective Members and the Class Members were being required to perform post-shift work for which they were not being compensated.

38.     As a result of the pre- and post-shift work, Plaintiff, the Collective Members and the Class Members typically spend at least 15 minutes or more each shift that goes completely uncompensated, whether at a regular rate of pay or an overtime rate of pay. In all instances, AMN's failure to compensate Plaintiff, the Collective Members and the Class Members for such time violates the minimum wage provisions of the FLSA and OMFWSA. In all instances wherein Plaintiff, the Collective Members and the Class Members work over 40 hours in a workweek, AMN's failure to compensate Plaintiff, the Collective Members and the Class Members for such time violates the overtime provisions of the FLSA and OMFWSA. In all instances wherein Plaintiff, the Collective Members and the Class Members worked, but not over 40 hours in a workweek, AMN's failure to compensate Plaintiff, the Collective Members and the Class Members for such time violates the minimum wage provisions of the FLSA and OMFWSA

39.     At all relevant times, Plaintiff, the Collective Members and the Class Members were eligible to earn non-discretionary bonus payments because of positive or exemplary performance. These bonus payments were typically made in a lump sum. For example, on or about October 15, 2021, Plaintiff earned a $250 bonus payment as result of her positive or exemplary performance. However, AMN does not include

these non-discretionary bonus payments in Plaintiff's, the Collective Members' and the Class Members' regular rates of pay to compute the overtime rate paid. As a result, AMN has violated the overtime provisions of the FLSA and OMFWSA.

40.  At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to AMN's company-wide "break" policy. *See* excerpt from Language Operations US Policies Manual attached hereto as "**Exhibit B**" and incorporated as if fully rewritten herein.

41.  Pursuant to AMN's break policy, Plaintiff, the Collective Members and the Class Members can work as much as 7.75 hours while receiving only one paid 15-minute break, i.e. the "scheduled break." Plaintiff, the Collective Member and the Class Members can work over 10 hours while receiving only two paid 15-minute scheduled breaks. If Plaintiff, the Collective Members and the Class Members work 3.75 hours or less, then they receive no paid break time whatsoever.

42.  AMN's break policy further provides that "[s]hifts extended due to long sessions will not be eligible to have additional breaks paid out, as breaks are intended to be scheduled and taken during the shift." Moreover, "[i]f the last break cannot be taken due to servicing a long session, that break time is not to be added as paid time at the end of the shift." In addition, under the policy, Interpreters are discouraged from "needlessly transferring or logging out of a live session to take their scheduled break/lunch time."

43.  Plaintiff, the Collective Members' and the Class Members' primary job function is to listen to a patient speaking in a foreign language, translate the patient's words to the healthcare provider in English, then listen to the healthcare provider's response, and then translate the healthcare provider's response to the patient in their foreign language. Naturally, these sessions go beyond their allotted time and therefore Plaintiff, the Collective Members and the Class Members cannot take one or more of their scheduled 15-minute breaks and therefore must work through their 15-minute

breaks. However, under the policy, they are prohibited from adding the missed break to total hours worked during a shift, and as a result, are not being compensated for all hours worked. In addition, Plaintiff, the Collective Members and the Class Members may need brief rest breaks which fall outside of AMN sparse scheduled break policy. Any such break is treated as an "unscheduled break" and AMN does not compensate Plaintiff, the Collective Members and the Class Members for the same.

44.    AMN's failure to pay Plaintiff, the Collective Members and the Class Members for any unscheduled break of 20 minutes or less violates the minimum wage provisions of the FLSA and OMFWSA in all instances. In all instances wherein Plaintiff, the Collective Members and the Class Members worked over 40 hours in a workweek, AMN's failure to compensate Plaintiff, the Collective Members and the Class Members for any break of 20 minutes or less violates the overtime provisions of the FLSA and OMFWSA.

45.    AMN requires Plaintiff, the Collective Members and the Class Members to supply their own highspeed internet routers and modems. *See* excerpt from Language Operations US Policies Manual attached hereto as "**Exhibit C**" and incorporated as if fully rewritten herein. Moreover, Plaintiff, the Collective Members and the Class Members must provide highspeed internet service with bandwidth capable of at least 10 megabytes per second on download and at least 2 megabytes per second on upload. However, AMN fails to reimburse Plaintiff, the Collective Members and the Class Members for such required equipment and internet service. As such, AMN has violated both the minimum wage and overtime provisions of the FLSA and OMFWSA.

## COLLECTIVE ACTION ALLEGATIONS

46.    Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

47.    Plaintiff brings this action under 29 U.S.C. § 216(b) on her own behalf

and as a representative of individuals similarly situated who are current or former Interpreters employed by AMN.

48.     AMN subjected all of its Interpreters, including Plaintiff and the Collective Members, to its policy and practice of not paying them minimum wage or overtime for all time spent setting up computer, audio and video equipment; booting up computers and launching AMN software; logging out of AMN software; shutting down computers; taking down audio and video equipment; and cleaning computer, audio and video equipment in violation of 29 U.S.C. §§ 206 and 207.

49.     AMN subjected all of its Interpreters, including Plaintiff and the Collective Members, to its policy of failing to include non-discretionary bonus payments in Plaintiff's and the Collective Members' regular rates of pay to compute their overtime paid in violation of 29 U.S.C §§ 206 and 207.

50.     AMN subjected all of its Interpreters, including Plaintiff and the Collective Members, to its policy of failing to pay Plaintiff and the Collective Members for all scheduled breaks they missed or had to work through and all unscheduled breaks of 20 minutes or less in violation of 29 U.S.C §§ 206 and 207.

51.     AMN subjected all of its Interpreters, including Plaintiff and the Collective Members, to its policy of requiring Plaintiff and the Collective Members to provide highspeed internet equipment and service without reimbursing Plaintiff and the Collective Members for same.

52.     Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

53.     The Collective Members perform or have performed the same or similar work as Plaintiff.

54.     AMN's failure to pay minimum wage and overtime compensation

required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of Plaintiff or the Collective Members.

55.     Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by AMN that caused harm to the Collective Members.

56.     As such, Plaintiff bring his FLSA overtime claim as a collective action on behalf of the following class:

> **All of AMN's current and former Interpreters and those with similar job duties, but different titles, who worked for AMN at any time from three years preceding the filing of this Complaint to the present.**

57.     AMN's unlawful conduct, as described herein, is pursuant to AMN's corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

58.     AMN is aware or should have known federal law prohibited them from not paying Plaintiff and the Collective Members all minimum wage and overtime as detailed herein.

59.     AMN's unlawful conduct has been widespread, repeated, and consistent.

60.     This action is properly brought and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

61.     Upon information and belief, the individuals similarly situated to Plaintiff includes hundreds, and possibly thousands, of Interpreters currently and/or formerly employed by AMN. Plaintiff cannot state the precise number of similarly-situated employees because that information is solely in AMN's possession, custody, or control, but it can be readily ascertained from its employment records.

62.     Notice can be provided to the Collective Members by First Class Mail to the last address known to AMN, via email at the last known email address known to AMN, and by text message to the last known telephone number known to AMN.

## OHIO RULE 23 CLASS DEFINITION AND ALLEGATIONS

63.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

64.     **Rule 23 Class.** Plaintiff brings Claims for Relief for violation of Ohio wage-and-hour laws as a class action under Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of herself and all members of the following class comprised of:

> **The Class Members are all of AMN's current and former Interpreters and those with similar job duties, but different titles, who worked for AMN, within Ohio, at any time from three years preceding the filing of this Complaint to the present.**

65.     **Numerosity (Rule 23(a)(1)).** The Class Members are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges that AMN employed greater than one hundred people who satisfy the definition of the Class Members.

66.     **Existence of Common Questions of Law and Fact (Rule 23(a)(2)).** Common questions of law and fact exist as to Plaintiff and the Class Members including, but not limited to, the following:

    a.  Whether AMN unlawfully failed to pay the Class Members all minimum and overtime wages, in violation of the OMFWSA;

    b.  Whether AMN unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

c. The damages sustained and the proper measure of restitution recoverable by members of the Class Members.

67. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, was subjected to AMN's illegal scheme to maximize profits by depriving their employees of minimum wage and overtime compensation.

68. **Adequacy (Rule 23(a)(4)).** Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

69. **Injunctive and Declaratory Relief (Rule 23(b)(2)).** Class certification of the Rule 23 claims is appropriate under Rule 23(b)(2) because AMN acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

70. **Predominance and Superiority of Class Action (Rule 23(b)(3)).** Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. AMN's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about AMN's practices.

71. Plaintiff intends to send notice to all Class Members to the extent

**COLLECTIVE AND CLASS ACTION COMPLAINT**

1  required by Rule 23.

## COUNT ONE: FAIR LABOR STANDARDS ACT
## OFF-THE-CLOCK WORK

72.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

73.     AMN has a consistent enterprise-wide policy of requiring Plaintiff and the Collective Members to perform work while off the clock and failing and/or refusing to compensate Plaintiff and the Collective Members their regular rate of pay for all non-overtime hours worked, and one and one-half times their regular hourly rate for all the time they worked over 40 hours in a workweek.

74.     Plaintiff and the Collective Members perform their duties and provide their interpretation services for AMN remotely. As part of this design, AMN issues Plaintiff and the Collective Members computer, audio and video equipment for use in Plaintiff's and the Collective Members' homes. This AMN equipment contains AMN's proprietary software programs which Plaintiff and the Collective Members must log on to perform their job functions for AMN.

75.     At all relative times, Plaintiff and the Collective Members have been subject to AMN's policy of requiring Plaintiff and the Collective Members to spend time working before clocking in at the beginning of their shifts and after clocking out at the end of their shifts.

76.     Specifically, Plaintiff, and the Collective Members must set up the required audio and video equipment and perform quality checks before being "clocked in" and therefore perform uncompensated work. Moreover, Plaintiff and the Collective Members are required to spend time booting up and logging into their computers before clocking in for their shift and required to clock out at the end of their shift before logging off, shutting down their computers and cleaning the AMN issued equipment.

77.     As a result, Plaintiff and the Collective Members typically spend at least 15 minutes or more each shift that goes completely uncompensated. In all instances, AMN's failure to compensate Plaintiff and the Collective Members for such time violates the minimum wage provisions of the FLSA, 29 U.S.C. § 206. In all instances wherein Plaintiff and the Collective Members work over 40 hours in a workweek, AMN's failure to compensate Plaintiff and the Collective Members for such time violates the overtime provisions of the FLSA, 29 U.S.C. § 207.

78.     Although at this stage, Plaintiff and the Collective Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Collective Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

79.     AMN knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members during their employment would violate the FLSA, and AMN knew the FLSA's minimum wage and overtime requirements. As such, AMN's conduct constitutes a willful violation of the FLSA.

80.     As a result of AMN's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, and AMN's failure or refusal to pay Plaintiff and the Collective Members one and one-half times their regular rate of pay for all hours worked over 40 hours in any workweek, AMN violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of all unpaid minimum wages and one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

/ / /

**COUNT TWO: OHIO MINIMUM FAIR WAGE STANDARDS ACT**

**OFF-THE-CLOCK WORK**

80.     Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

81.     "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002).

82.     AMN has a consistent enterprise-wide policy of requiring Plaintiff and the Class Members to perform work while off the clock and failing and/or refusing to compensate Plaintiff and the Class Members their regular rate of pay for all non-overtime hours worked, and one-half times their regular hourly rate for all the time they worked over 40 hours in a workweek.

83.     Plaintiff and the Class Members perform their duties and provide their interpretation services for AMN remotely. As part of this design, AMN issues Plaintiff and the Class Members computer, audio and video equipment for use in Plaintiff's and the Class Members' homes. This AMN equipment contains AMN's proprietary software programs which Plaintiff and the Class Members must log on to perform their job functions for AMN.

84.     At all relative times, Plaintiff and the Class Members have been subject to AMN's policy of requiring Plaintiff and the Class Members to spend time working before clocking in at the beginning of their shifts and after clocking out at the end of their shifts.

85.     Specifically, Plaintiff and the Class Members must set up the required audio and video equipment and perform quality checks before being "logged in" and therefore perform work that is uncompensated. Moreover, Plaintiff and the Class

Members are required to spend time booting up and logging into their computers before clocking in for their shift and required to clock out at the end of their shift before logging off, shutting down their computers and cleaning the AMN issued equipment.

86.    As a result, Plaintiff and the Class Members typically spend at least 15 minutes or more each shift that goes completely uncompensated. In all instances, AMN's failure to compensate Plaintiff and the Class Members for such time violates the minimum wage provisions of O.R.C. § 4111, *et seq*. In all instances wherein Plaintiff and the Class Members work over 40 hours in a workweek, AMN's failure to compensate Plaintiff and the Class Members for such time violates the overtime provisions of O.R.C. § 4111, *et seq*.

87.    Although at this stage, Plaintiff and the Class Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Class Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

88.    AMN knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Class Members for all hours worked would violate Ohio law, and AMN knew the Ohio's minimum wage and overtime requirements during Plaintiff's and the Class Members' employment. As such, AMN's conduct constitutes a willful violation of the OMFWSA.

89.    As a result of AMN's failure or refusal to pay Plaintiff and the Class Members all minimum wages and overtime due under Ohio law, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

/ / /

**COLLECTIVE AND CLASS ACTION COMPLAINT**

## COUNT THREE: FAIR LABOR STANDARDS ACT
## FAILURE TO INCLUDE BONUS PAY IN OVERTIME RATE

90.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

91.     Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working over 40 hours in a workweek. To compute the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

92.     At all relevant times, Plaintiff and the Collective Members were eligible to earn non-discretionary bonus payments because of positive or exemplary performance. These bonus payments were typically made in a lump sum. For example, on or about October 15, 2021, Plaintiff earned a $250 bonus payment as result of her positive or exemplary performance.

93.     However, AMN does not include these non-discretionary bonus payments in Plaintiff's and the Collective Members' regular rates of pay to compute the overtime rate paid. As a result, AMN has violated overtime provisions of the FLSA.

94.     Although at this stage, Plaintiff and the Collective Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Collective Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

95.     AMN knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members during their employment would violate the FLSA, and AMN knew the FLSA's minimum

wage and overtime requirements. As such, AMN's conduct constitutes a willful violation of the FLSA.

96.     As a result of AMN's failure or refusal to pay Plaintiff and the Collective Members one and one-half times their regular rate of pay for all hours worked over 40 hours in any workweek, AMN violated 29 U.S.C. § 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT FOUR: OHIO MINIMUM FAIR WAGE STANDARDS ACT FAILURE TO INCLUDE BONUS PAY IN OVERIME

97.     Plaintiff and the Class Members reallege and incorporates by reference all allegations in all preceding paragraphs.

98.     "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002). Under the OMFWSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working over 40 hours in a workweek. To compute the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments.

99.     At all relevant times, Plaintiff and the Class Members were eligible to earn non-discretionary bonus payments because of positive or exemplary performance. These bonus payments were typically made in a lump sum. For example, on or about October 15, 2021, Plaintiff earned a $250 bonus payment as result of her positive or exemplary performance.

100.    However, AMN does not include these non-discretionary bonus

**COLLECTIVE AND CLASS ACTION COMPLAINT**

payments in Plaintiff's and the Class Members' regular rates of pay to compute the overtime rate paid. As a result, AMN has violated to overtime provisions of the OMFWSA.

101.   However, AMN does not include these non-discretionary bonus payments in Plaintiff's and the Class Members' regular rates of pay to compute the overtime rate paid. As a result, AMN has violated and continues to violate the overtime provisions of the OMFWSA.

102.   Although at this stage, Plaintiff and the Class Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Class Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

103.   AMN knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Class Members for all hours worked would violate Ohio law, and AMN knew the Ohio's overtime requirements during Plaintiff's and the Class Members' employment. As such, AMN's conduct constitutes a willful violation of the OMFWSA.

104.   As a result of AMN's failure or refusal to pay Plaintiff and the Class Members all overtime due under Ohio law, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven plus treble damages and interest, reasonable attorney's fees, and costs.

## COUNT FIVE: FAIR LABOR STANDARDS ACTS
## UNLAWFUL UNPAID BREAKS

105.   Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

106.   Under the FLSA, "[r]est periods of short duration, running from 5

**COLLECTIVE AND CLASS ACTION COMPLAINT**

1    minutes to about 20 minutes. . . must be counted as hours worked." *See* 29 C.F.R.

2    785.18; *see also Mauia v. Petrochem Insulation,* Inc., 5 F.4th 1068, 1074 (9th Cir.

3    2021). AMN violated the FLSA by routinely failing to pay Plaintiff and the Collective

4    Members for rest breaks shorter than 20 minutes.

5         107.   At all relevant times, Plaintiff and the Collective Members were subject

6    to AMN's company-wide "break" policy. *See* excerpt from Language Operations US

7    Policies Manual attached hereto as **"Exhibit B"** and incorporated as if fully rewritten

8    herein.

9         108.   Under AMN's break policy, Plaintiff and the Collective Members can

10   work as much as 7.75 hours while receiving only one paid 15-minute break, i.e. the

11   "scheduled break." Plaintiff and the Collective Members can work over 10 hours

12   while receiving only two paid 15-minute scheduled breaks. If Plaintiff and the Class

13   Members work 3.75 hours or less, then they receive no paid break time whatsoever.

14        109.   AMN's break policy further provides that "[s]hifts extended due to long

15   sessions will not be eligible to have additional breaks paid out, as breaks are intended

16   to be scheduled and taken during the shift." Moreover, "[i]f the last break cannot be

17   taken due to servicing a long session, that break time is not to be added as paid time

18   at the end of the shift."

19        110.   Plaintiff's and the Collective Members' primary job function is to listen

20   to a patient speaking in a foreign language, translate the patient's words to the

21   healthcare provider in English, then listen to the healthcare provider's response, and

22   then translate the healthcare provider's response to the patient in their foreign

23   language. Naturally, the length of these sessions will take longer than allotted and

24   therefore Plaintiff and Collective Members would have to work through their breaks.

25   However, under the policy, Plaintiff and Collective Members could not add the missed

26   breaks to total hours worked in a shift and therefore were not being paid for all non-

27   overtime and overtime hours worked. In addition, Plaintiff and the Collective

28

Members may need brief rest breaks which fall outside of AMN's sparse scheduled break policy. Any such break is treated as an "unscheduled break" and AMN does not compensate Plaintiff and the Collective Members for same.

111.   AMN's failure to pay Plaintiff and the Collective Members for missed breaks and/or any unscheduled break of 20 minutes or less violates the minimum wage provisions of the FLSA in all instances. In all instances wherein Plaintiff and the Collective Members worked over 40 hours in a workweek, AMN's failure to compensate Plaintiff and the Collective Members for missed breaks and/or any unscheduled break of 20 minutes or less violates the overtime provisions of the FLSA.

112.   Although at this stage, Plaintiff and the Collective Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Collective Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

113.   AMN knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members during their employment would violate the FLSA, and AMN knew the FLSA's minimum wage and overtime requirements. As such, AMN's conduct constitutes a willful violation of the FLSA.

114.   As a result of AMN's failure or refusal to pay Plaintiff and the Collective Members their regular rate of pay for all hours worked and one and one-half times their regular rate of pay for all hours worked over 40 hours in any workweek, AMN violated 29 U.S.C. § 207(a). Plaintiff and the Collective Members are therefore entitled to compensation for unpaid wages at their regular rate of pay for non-overtime hours worked and one and one-half times their regular rate of pay for unpaid overtime hours, to be proven at trial, plus an additional equal amount as liquidated damages,

1  together with interest, reasonable attorney's fees, and costs.

2  ## COUNT SIX: OHIO MINIMUM FAIR WAGE STANDARDS ACT
3  ## UNLAWFUL UNPAID BREAKS

4  115.   Plaintiff and the Class Members reallege and incorporate by reference all
5  allegations in all preceding paragraphs.

6  116.   "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject
7  to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL
8  3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie &*
9  *Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l.*
10  *Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). Under the OMFWSA, rest periods of
11  short duration, running from 5 minutes to about 20 minutes, must be counted as hours
12  worked. AMN violated the OMWFSA by routinely failing to pay Plaintiff and the
13  Class Members for rest breaks shorter than 20 minutes.

14  117.   At all relevant times, Plaintiff and the Class Members were subject to
15  AMN's company-wide "break" policy. *See* excerpt from Language Operations US
16  Policies Manual attached hereto as **"Exhibit B"** and incorporated as if fully rewritten
17  herein.

18  118.   Pursuant to AMN's break policy, Plaintiff and the Class Members can
19  work as much as 7.75 hours while receiving only one paid 15-minute break, i.e. the
20  "scheduled break." Plaintiff and the Class Members can work over 10 hours while
21  receiving only two paid 15-minute scheduled breaks. If Plaintiff and the Class
22  Members work 3.75 hours or less, then they receive no paid break time whatsoever.

23  119.   AMN's break policy further provides that "[s]hifts extended due to long
24  sessions will not be eligible to have additional breaks paid out, as breaks are intended
25  to be scheduled and taken during the shift." Moreover, "[i]f the last break cannot be
26  taken due to servicing a long session, that break time is not to be added as paid time
27  at the end of the shift."

28

120.   Plaintiff's and the Class Members' primary job function is to listen to a patient speaking in a foreign language, translate the patient's words to the healthcare provider in English, then listen to the healthcare provider's response, and then translate the healthcare provider's response to the patient in their foreign language. Naturally, the length of these sessions will take longer than allotted and therefore Plaintiff and Collective Members would have to work through their breaks. However, under the policy, Plaintiff and Collective Members could not add the missed breaks to total hours worked in a shift and therefore were not being paid for all non-overtime and overtime hours worked. In addition, Plaintiff and the Collective Members may need brief rest breaks which fall outside of AMN's sparse scheduled break policy. Any such break is treated as an "unscheduled break" and AMN does not compensate Plaintiff and the Collective Members for same.

121.   AMN's failure to pay Plaintiff and the Class Members for any breaks they missed and were required to work through and any unscheduled break of 20 minutes or less violates the minimum wage provisions of the OMFWSA in all instances. In all instances wherein Plaintiff and the Class Members worked over 40 hours in a workweek, AMN's failure to compensate Plaintiff and the Class Members for any unscheduled break of 20 minutes or less violates the overtime provisions of the OMFWSA.

122.   Although at this stage, Plaintiff and the Class Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Class Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

123.   AMN knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Class Members for all hours

**COLLECTIVE AND CLASS ACTION COMPLAINT**

worked would violate Ohio law, and AMN knew the Ohio's minimum wage and overtime requirements during Plaintiff's and the Class Members' employment. As such, AMN's conduct constitutes a willful violation of the OMFWSA.

124.    As a result of AMN's failure or refusal to pay Plaintiff and the Class Members all minimum wages and overtime due under Ohio law, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

## COUNT SEVEN: FAIR LABOR STANDARDS ACT
## IMPROPER KICKBACKS

125.    Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

125.    The wage requirements of the FLSA "will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." *See* 29 C.F.R. 778.315. "For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

126.    AMN requires Plaintiff and the Collective Members to supply their own highspeed internet routers and modems. *See* excerpt from Language Operations US Policies Manual attached hereto as "**Exhibit C**" and incorporated as if fully rewritten herein. Moreover, Plaintiff and the Collective Members must provide highspeed internet service with bandwidth capable of at least 10 megabytes per second on download and at least 2 megabytes per second on upload. However, AMN fails to reimburse Plaintiff and the Collective Members for such required equipment and internet service. As such, AMN has violated both the minimum wage and overtime

1    provisions of the FLSA.

2       127.   Although at this stage, Plaintiff and the Collective Members cannot state

3    the exact amount owed for all time worked during their employment, Plaintiff and the

4    Collective Members believe that such information will become available during

5    discovery. Furthermore, when an employer fails to keep complete and accurate time

6    records, employees may establish the hours worked by their testimony, and the burden

7    of overcoming such testimony shifts to the employer.

8       128.   AMN knew that – or acted with reckless disregard as to whether – its

9    refusal or failure to properly compensate Plaintiff and the Collective Members during

10   their employment would violate the FLSA, and AMN knew the FLSA's minimum

11   wage and overtime requirements. As such, AMN's conduct constitutes a willful

12   violation of the FLSA.

13      129.   As a result of AMN's failure to reimburse Plaintiff and the Collective

14   Members for their internet equipment and service, AMN violated the minimum wage

15   and overtime provisions of the FLSA. Plaintiff and the Collective Members are

16   therefore entitled to minimum wage and overtime compensation, to be proven at trial,

17   plus an additional equal amount as liquidated damages, together with interest,

18   reasonable attorney's fees, and costs.

19   ## COUNT EIGHT: OHIO MINIMUM FAIR WAGE STANDARDS ACT
20   ## IMPROPER KICKBACKS

21      130.   Plaintiff and the Class Members reallege and incorporate by reference all

22   allegations in all preceding paragraphs.

23      131.   "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject

24   to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL

25   3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie &*

26   *Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l.*

27   *Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). The wage requirements of the

28

OMFWSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

132.   AMN requires Plaintiff and the Class Members to supply their own highspeed internet routers and modems. *See* excerpt from Language Operations US Policies Manual attached hereto as "**Exhibit C**" and incorporated as if fully rewritten herein. Moreover, Plaintiff and the Class Members must provide highspeed internet service with bandwidth capable of at least 10 megabytes per second on download and at least 2 megabytes per second on upload. However, AMN fails to reimburse Plaintiff and the Class Members for such required equipment and internet service. As such, AMN has violated both the minimum wage and overtime provisions of the OMFWSA.

133.   Although at this stage, Plaintiff and the Class Members cannot state the exact amount owed for all time worked during their employment, Plaintiff and the Class Members believe that such information will become available during discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

133.   AMN knew that – or acted with reckless disregard as to whether – its refusal or failure reimburse Plaintiff and Class Members for their highspeed internet equipment and service would violate Ohio law, and AMN knew the Ohio's minimum wage and overtime requirements during Plaintiff's and the Class Members' employment. As such, AMN's conduct constitutes a willful violation of the OMFWSA.

134.   As a result of AMN's refusal or failure reimburse Plaintiff and Class Members for their highspeed internet equipment and service, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated persons, requests this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against AMN:

A.    For the Court to declare and find AMN committed one or more of the following acts:

    i.  violated the minimum wage and overtime provisions of the FLSA;

    ii.  willfully violated the minimum wage and overtime provisions of the FLSA;

    iii. violated the minimum wage and overtime provisions of the OMFWSA; and

    iv. willfully violated the minimum wage and overtime provisions of the OMFWSA.

B.    For the Court to award damages in the amounts of all unpaid minimum and overtime wages due and owing to Plaintiff, the Collective Members and the Class Members;

For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

C.    For the Court to award prejudgment and post-judgment interest on any damages awarded;

D.    For the Court to award all treble damages, interest, attorney's fees and costs owed to Plaintiff and the Class Members under the OMFWSA;

For the Court to award Plaintiff's and the Collective Members' reasonable attorneys' fees and costs of the action under 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

E.    For the Court to provide a reasonable incentive award for Plaintiff to

**COLLECTIVE AND CLASS ACTION COMPLAINT**

1  compensate her for the time she spent attempting to recover wages for

2  the Collective Members and Class Members and for the risks she took in

3  doing so; and

4  F.  Such other relief as this Court deems just and proper.

5  **DEMAND FOR JURY TRIAL**

6  Plaintiff, the Collective Members and the Class Members hereby demand a jury

7  trial on all causes of action and claims with respect to which they each have a state

8  and/or federal constitutional right to a jury trial.

9  DATED: December 30, 2021            Respectfully submitted,

10            **KABATECK LLP**

11  By: /s/ Brian S. Kabateck
    Brian S. Kabateck (SBN 152054)
12     bsk@kbklawyers.com
    Shant Karnikian (SBN 285048)
13     sk@kbklawyers.com
    Jerusalem F. Beligan (SBN 211258)
14  633 W. Fifth Street, Suite 3200
    Los Angeles, CA 90071
15  Telephone: (213) 217-5000
    Facsimile: (213) 217-5010

16

17  **THE LAW OFFICES OF SIMON & SIMON**

18  By: /s/ *James L. Simon*
    James L. Simon (*pro hac vice*
19  forthcoming)
     james@bswages.com
20  5000 Rockside Road
    Liberty Plaza – Suite 520
21  Independence, OH 44131
    Telephone: (216) 525-8890
22

23  /s/ *Michael L. Fradin*
    Michael L. Fradin, Esq. (*pro hac vice*
24  forthcoming)
     mike@fradinlaw.com
25  8401 Crawford Ave., Ste. 104
    Skokie, IL 60076
26  Telephone: 847-986-5889
    Facsimile: 847-673-1228

27  *Attorneys for Plaintiff and the Putative Classes*

28

- 30 -
**COLLECTIVE AND CLASS ACTION COMPLAINT**

\#                       \#

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Sharon Oliveira**, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | **PLAINTIFF SHARON OLIVERIA'S CONSENT TO JOIN COLLECTIVE ACTION AS NAMED PLAINTIFF** |
| v. | |
| **AMN Healthcare, Inc.** a Nevada Corporation. | |
| Defendant. | |

I, Sharon Oliveira, do hereby consent to be a party plaintiff to the above-entitled action. I have read the complaint to be filed in the United States District Court for the Southern District of California, and authorize my attorneys, the Law Offices of Simon & Simon, Michael Fradin, Attorney at Law, Kabatek LLP and their associated attorneys ("the Attorneys"), to file the Complaint on my behalf and for other employees similarly situated. I authorize the Attorneys to represent me in the Lawsuit and make decisions on my behalf, including how to conduct the Lawsuit, settlement, and all other matters related to the Lawsuit.

DocuSigned by:

_____
Sharon Oliveira

11/9/2021
_____
Date

\#                         \#

# Exhibit B



| | | |
|---|---|---|
| **Standard Operating Policies** | Department Name: | Language Operations |
| | DO Title: | US Policies Manual |
| | DO No: | LO-DO001-USPM-V2 |

Visual Connections. Vital Conversations



Language Operations

# US Policies Manual

# Chapter 3: Shifts and Work Schedules

## Section 1: Type of Shifts and Limitations

There are three types of schedules offered:
- **Full Time:** Required to work a minimum of 40 hours per payroll week
- **Part Time:** Required to work a minimum of 20 hours per payroll week with a maximum of 29 scheduled hours per payroll week
- **Flex Schedule** (for certain languages only):  Required to work minimum of 12 hours per month or a maximum of 29 hours per payroll week

### A.  Daily Limitations:

Unless approved due to extenuating circumstances and on a case-by-case basis, employees are limited to scheduling a maximum daily limit of 10 hours, and in the case or CA employees, a maximum daily limit of 8 hours.

Regularly scheduled hours, plus any extra hours picked up via Calabrio (Teleopti), cannot exceed the maximum daily limit of hours.

### B.  Weekly Limitations:

Employees may voluntarily choose to work overtime hours, if offered. It is the employee's responsibility to observe the 7th calendar consecutive day restriction (from 12:00am to 11:59pm).  An employee cannot work seven days straight, unless approved due to extenuating circumstances and on a case-by-case basis.

WFM will approve OT max hours, as staffing needs indicate, and communicate those limits via email.

Failure to comply with this policy can lead to the loss of the ability to work overtime hours and/or disciplinary actions.  Additionally, to ensure that employees have ample time to rest between shifts, to effectively perform duties, when overtime is approved, maximum hours worked rules apply.  WFM will communicate those maximums subject to staffing needs.

## Section 2: Break Policy

### A. Scheduled Breaks

Breaks are scheduled according to the length of the daily shift (number of consecutive hours scheduled), and their main purpose is to allow rest time from assigned duties and functions during the shift. Breaks are scheduled and published in Calabrio (Teleopti), to be taken at the assigned time, and for the authorized time, if not delayed by a call.

Scheduled Breaks can be paid or unpaid:

AMN Language Services Proprietary

- ***Scheduled Paid break***: 15-minute scheduled break in Calabrio (Teleopti).  Use the "break" status on the IWS Agent Desktop. Do not clock out of Paycom.

- ***Scheduled Unpaid Break***: 15-minute scheduled break in Calabrio (Teleopti) previously approved due to extenuating circumstances. Use "break" status on the IWS Agent Desktop and **DO clock out of Paycom**.  Clock back in on Paycom once completed.

- ***Scheduled Unpaid Lunch break***: 30-minute scheduled Lunch break in Calabrio (Teleopti).  Use "Lunch" status on the IWS Agent Desktop and **DO clock out of Paycom**.  Clock back in on Paycom once completed.

The following chart indicates the number of breaks and break-type, employees are entitled to depending on the scheduled shift duration.

| US Based VI /CSR Break Time Chart for Scheduled Shifts | |
|---|---|
| **Total Consecutive Hours Scheduled** | **Break** |
| 0 - 3.75 hours | No Break |
| 4 - 5 hours | one 15-minute paid break |
| 5.25 - 5.75 hours | If state required: one 15-minute paid break, one 30-minute unpaid lunch (which would extend shift by 30 minutes) **see note below. |
| 6 - 7.75 hours | one 15-minute paid break, one 30-minute unpaid lunch |
| 8 - 10 hours | two 15-minute paid breaks, one  30-minute unpaid lunch |
| 10+ | Shift Not allowed unless approved due to extenuating circumstances |

*** Note:*
1. *In some states, when working more than five consecutive hours, employees may be required to take a 30-minute unpaid lunch break, unless employee signs a written waiver (reach out to your LO Manager with any questions about eligible breaks).*

2. *Shift total hours do not include unpaid breaks.*

3. *Employees working extraordinary hours consecutively to the ordinary shift, may be eligible for additional break times based on Break-Chart above.  Employees must report breaks/lunch taken during OT shifts in their Team's Break Room, by indicating "OT Unscheduled Break" or "OT Unscheduled Lunch."*

AMN Language Services Proprietary

**Important Break Considerations:**

- Shifts extended due to long sessions will not be eligible to have additional breaks paid out, as breaks are intended to be scheduled and taken during the shift. Additional interpreted minutes will be compensated accordingly.
- If two breaks overlap due to servicing a long session, the employee will take the breaks together, selecting the appropriate status (Break/Lunch), for the corresponding time, to avoid impacting schedule adherence.
- Employees must not postpone or combine break times, unless delayed due to a long session.
- If the last break cannot be taken due to servicing a long session, that break time is not to be added as paid time at the end of the shift.
- Employees will not use break times to compensate for any attendance issues at the beginning or during the shift, such as late arrivals and/or unauthorized offline time.
- If an interpreter is in session at their scheduled break time, the interpreter will take the break immediately after the session is completed, as long as there is still time left in the shift.
- Interpreters should avoid needlessly transferring or logging out of a live session to take their scheduled break/lunch time. Employees should follow-up with Team Leads or their LO Manager for guidance if needed.

## B. Unscheduled Breaks

- Lactation Break:  The company will provide break time to accommodate an employee desiring to express breast milk for the employee's infant child up to one (1) year of age, unless applicable state or local law require otherwise. If possible, this break time shall run concurrently with any break time already provided by law to the employee. Any break time given for this purpose that does not run concurrently with the break time provided by law shall be unpaid. The employee must communicate the need to the LO Manager/Supervisor. The employee must clock out from Paycom for the duration of the break and clock back in once completed.

## C. Break Schedule for ASL Colleagues
This information is for US-based American Sign Language (ASL) colleagues only.

For the ASL interpreters the following break schedule is observed.

- Nine minutes paid break every hour (not built into a schedule)

## Section 3. Overtime Considerations
Extra Hours and Overtime Considerations
Employees can voluntarily pick-up extra hours through the WFM scheduling platform (Calabrio (Teleopti)).  These hours are automatically approved or denied based on business needs. Once the extra hour request is sent and approved, it cannot be canceled. It is the employee's responsibility to adhere to the additional hours requested, as those hours become part of the schedule.  These extra hours are referred to in Calabrio (Teleopti) as "OT;" however, the definition of true OT (overtime) and OT rates is determined by the labor laws of the state in which the employee lives in.

\#

**Exhibit C**



**Standard Operating Policies**

| Department Name: | Language Operations |
| --- | --- |
| DO Title: | US Policies Manual |
| DO No: | LO-DO001-USPM-V2 |

Visual Connections. Vital Conversations



Language Operations

# US Policies Manual

## Section 8. Confidential Company Information

While working, an employee may become aware of confidential information including but not limited to information regarding company finances, pricing, products and new product development, software and computer programs, marketing strategies, suppliers, customers and potential customers, and knowledge, skills and abilities of personnel. An employee may also become aware of confidential information belonging to the company's clients and business associates. It is extremely important that all such information remain confidential, and not disclosed to anyone including the Company's competitors.  Any employee who improperly copies, removes (whether physically or electronically), uses or discloses confidential information to anyone outside of the Company may be subject to disciplinary action up to and including termination and/or legal action.

## Section 9: Fraud

A single act of fraud is devastating, creates a negative impact in the service, imbalance in the workload and it breaks the trust within the work relationship. No matter how long an employee has been with the company, his/her level of education or professionalization, his/her position, fraud is an act of deceiving and stealing that impacts all parties involved with you at work. That includes peers and team members, the patients not getting assistance, the providers not getting the service.

Employees found engaging in fraudulent behavior will be subject to disciplinary action up to and including immediate termination of employment.

AMN Language Services considers the following as fraud:
Getting paid for not performing:
- Sitting on calls that should have ended
- Avoiding calls
- Hanging up on calls already in process
- Rejecting calls
- Allowing calls to ring out, thus, missing calls
- Stealing time by clocking in and not logging in to work
- Not performing required job duties
- Not reporting outages, while remaining clocked in
- Offline time not reported, while being clocked in
  - i.e., extended breaks and/or additional paid breaks
  - staying in "unavailable" status for an extended amount of time (beginning of shift, after missed opportunity, after a transfer, etc.)
- Falsely reporting Company Tech Issues
- Falsifying outages/medical documents
- Using company equipment or otherwise taking calls for competitors while scheduled with AMN Language Services
- Using company equipment for personal purposes, while clocked in

# Chapter 7: Appropriate Use of Technological Equipment and Tools

AMN Language Services Proprietary

## Section 1: Electric Wiring

Our remote job environment (the agent's home office) must have the correct electrical wiring and be in good condition for the appropriate and efficient functioning of the electronic equipment needed to complete work-related functions. It must have a ground terminal connection (three-outlet connection or outlet with three holes) to prevent damage from electric storms. To ensure the correct connection of the ethernet cable, using the additional protection devices (Power strip and UPS) is recommended per the instructions of our IT department.

## Section 2: Network Connection

Internet modems must be located at a distance no farther than 10 feet from the workstation, since the interface access must be done through an Ethernet cable CAT6 (provided by company). A WIFI connection is not allowed while performing work with the company laptop.

## Section 3: Bandwidth (Internet Connection)

The required bandwidth (internet speed) for the optimal functioning of the equipment and systems is:

- o Video interpreters and Audio interpreters:
  10/2 Mpbs, that is 10 Mpbs for download and 2 Mpbs for upload. An internet connection lower than 9.0 Mpbs (download) or lower than 1.5 Mpbs (upload) is not approved nor appropriate to perform duties.

- o Customer Service Agents:
  4/2 Mpbs, that is 4 Mpbs for download and 2 Mpbs for upload. An internet connection lower than 3.5 Mpbs (download) or lower than 1.5 Mpbs (upload) is not approved nor appropriate to perform duties.

- Use of VPNs or connecting via WIFI is prohibited, a dedicated ethernet connection is required.
- AMN Language Services equipment is for work related activities only.  Please do not access unauthorized sites, this exposes our network to the risk of malware or spyware from nefarious sources and compromises quality.
- *All equipment provided by AMN Language Services is to be maintained and returned immediately in the event of any technical malfunction or upon separation from the company.*
- Ensure the equipment is rebooted at the end of each workday and make sure it is in good working order.

*NOTE:*  Any variation of these requirements must be approved by the IT Department. The internet connection must be installed and used exclusively for AMN Language Services' work, during working hours.

## Section 4: Preventive Care of the Equipment

All equipment provided by Company must be kept clean. No cleaning product that has not been previously authorized by the IT department can be used on it. The same goes for any repair or technical intervention from a third party that was not previously approved by the IT Department.

The expected and basic care for the equipment is to use a brush to remove dust from all the parts of the equipment (especially the laptop keyboard) at least once a week, while the equipment is off.

AMN Language Services Proprietary